IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ALLEN E. J.,[1]
    Plaintiff,

        v.                                            Civil No. 3:21-cv-00013 (JAG)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act ("Act"). Plaintiff was forty-four years old at the time of his alleged onset date of disability and previously worked as a loader/unloader. (R. at 178, 220.) Plaintiff alleges he is unable to work due to cervical spondylosis with radiculopathy, severe sleep apnea, shortness of breath with exertion, post operation external ventilation, and cervical fusion with instrumentation. (R. at 212-13.)

On April 29, 2020, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 15-28.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year

1

Plaintiff now seeks review of the ALJ's decision. (Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 24 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and/or a period of disability on May 9, 2019, alleging disability beginning August 10, 2018. (R. at 178.) The Social Security Administration ("SSA") denied Plaintiff's claim on July 25, 2019 and again upon reconsideration on September 19, 2019. (R. at 75-83, 86-96.) Plaintiff requested a hearing before an ALJ, and a hearing was held on April 9, 2020. (R. at 123, 35-74.) On April 29, 2020, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 15-28.) Plaintiff requested review of the ALJ's decision. (R. at 4.) On November 4, 2020, the SSA Appeals Council denied Plaintiff's request, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 1-4.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial

---

of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current

work activity. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite his physical and mental limitations. § 416.925(a).

At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. § 416.920(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-28.) *See* 20 C.F.R. § 404.1520(a); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 10, 2018, the alleged onset date. (R. at 17.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "cervical stenosis status post fusion, chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, bilateral carpal tunnel

4

syndrome status post release, retrocalcaneal bursitis of the left posterior heel, and obesity (20 CFR 404.1520(c))." (R. at 17.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 19-26.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform sedentary work, as defined in 20 CFR § 404.1567(a), except:

> he can lift and carry 10 pounds occasionally and less than 10 pounds frequently. He can stand and walk a combined two hours in an eight-hour workday and sit six hours out of eight hours. He must be permitted to alternate from sitting to standing every hour for up to five minutes while remaining productive at the work station. He can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can occasionally balance, kneel, crouch, crawl, and stoop. He can occasionally reach overhead with his bilateral upper extremities. He can frequently handle and finger bilaterally. He is able to perform work requiring up to occasional exposure to extreme temperatures, humidity, and workplace hazards such as unprotected heights and dangerous machinery. He is able to perform work requiring no exposure to fumes, odors, dust, gases, pulmonary irritants, and poor ventilation. He is able to perform work permitting use of a nebulizer during one scheduled break.

(R. at 19-20.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," including the medical opinions and prior medical findings, in accordance with the regulations. (R. at 20.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff was not able to perform past relevant work as a landscaper, forklift operator, or stores laborer as it is actually and generally performed. (R. at 26.)

At step five the ALJ found that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 27-28.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of occupations such as an addresser, call out operator, and charge account clerk. (R. at 27-28.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 28.)

## IV. ANALYSIS

Plaintiff argues that the ALJ failed to apply the correct legal standard when evaluating Plaintiff's subjective complaints of daily fatigue, therefore the residual functional capacity assessment and the ALJ's step five determination were in error. (Pl.'s Mem. at 1-9.)

Defendant responds that the ALJ applied the correct legal standard in evaluating Plaintiff's subjective complaints of daily fatigue and she properly incorporated Plaintiff's limitations in her residual functional capacity determination. (Def.'s Mot. Summ. J. 10-15 (ECF No. 25) ("Def.'s Mem.").) For the reasons that follow, this Court finds that the ALJ applied the correct legal standard in evaluating Plaintiff's complaints of daily fatigue. Therefore, the ALJ did not err in her step five findings.

**A. The ALJ Applied the Correct Legal Standards When Evaluating Plaintiff's Subjective Complaints of Daily Fatigue.**

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). The residual functional capacity must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on a claimant's consistent complaints. As of March 28, 2016, ALJs must follow a revised two-step analysis in reviewing a claimant's subjective complaints. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029 (Mar. 16, 2016); *see also* SSR

16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce a claimant's pain or other related symptoms. SSR 16-3p, 2016 SSR LEXIS 4, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce a claimant's pain or other symptoms, the second part of the analysis requires the ALJ to evaluate a claimant's "symptoms such as pain and determine the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." 2016 SSR LEXIS 4, [WL] at *4.

The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. 2016 SSR LEXIS 4, [WL] at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and any other sources that might have information about the [claimant's] symptoms." 2016 SSR LEXIS 4, [WL] at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. 2016 SSR LEXIS 4, [WL] at *8.

Furthermore, it is well-established that a claimant's subjective allegations are not, alone, conclusive evidence that she/he qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has found that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that although Plaintiff's impairments do cause some of his symptoms, "the objective evidence contained in the record, the conservative care he has received, his statement to providers for treatment purposes, and his admitted ability to perform a variety of daily tasks all suggest that these symptoms are not as severe or as limiting as he claims." (R. at 24.) Upon review of the ALJ's decision and the record, the Court finds that the ALJ properly considered the consistency between the evidence of record and Plaintiff's subjective complaints, including the extent to which Plaintiff could perform his activities of daily living. Moreover, substantial evidence supports the ALJ's credibility assessment.

> 1. *The ALJ Properly Considered the Extent to Which Plaintiff Performed his Activities of Daily Living.*

The ALJ sufficiently addressed the inconsistencies between Plaintiff's subjective complaints and his daily activities. In addressing daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Further, the ALJ must "*both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis and alteration in original) (internal quotation marks omitted). Otherwise the court is "left to guess" how the ALJ arrived at her conclusion and cannot meaningfully review her determinations. *Mascio*, 780 F.3d at 637. The ALJ satisfied both requirements and built a logical bridge from the evidence to her conclusion. (R. at 20-21, 23-24.)

Indeed, the ALJ found that Plaintiff could drive, grocery shop, perform household chores, care for his personal needs, help care for his children, watch television, and text on his cellphone,

while also noting the extent to which Plaintiff could perform these activities. (R. at 21-24.) For example, the ALJ stated that Plaintiff could shop in stores for his personal needs but cannot take a bath because it is too difficult to get out of the bathtub. (R. at 21.) The ALJ also acknowledged that Plaintiff uses an electric cart when shopping. (R. at 21.) Finally, the ALJ noted that Plaintiff's responses indicated he can drive, but he does not do so often. (R. at 21.)

The ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which he could perform them. The Court finds no error in the ALJ's characterization of Plaintiff's subjective complaints within the context of Plaintiff's activities of daily living. Indeed, for each activity of daily living identified by the ALJ, the ALJ appropriately qualified her analysis with limitations on those activities, providing a legally sufficient assessment of Plaintiff's subjective complaints.

Moreover, substantial evidence in the record supports the ALJ's findings. During Plaintiff's testimony to the ALJ, Plaintiff affirmed that he can generally care for himself, can go shopping and help with some household chores. (R. at 61-62.) Further, the record reflects Plaintiff can make daily meals and can care for his children with his wife's assistance. (R. at 287-88.) The ALJ accounted for these limitations to Plaintiff's activities of daily living in her assessment of Plaintiff's subjective complaints. Accordingly, the ALJ did not err.

2. *The ALJ Properly Considered Plaintiff's Objective Medical Records in Assessing His Subjective Complaints.*

As a second part of the ALJ's credibility assessment, the ALJ found that the objective medical evidence and Plaintiff's physical examinations did not support Plaintiff's subjective complaints of pain. (R. at 21.)

The ALJ observed that Plaintiff was diagnosed with "obstructive sleep apnea after undergoing a sleep study in March 2019." (R. at 22.) Plaintiff was prescribed a positive airway

9

pressure machine. (R. at 22.) He informed his provider at a follow-up appointment that he was feeling better. (R. at 22, citing R. at 911.) However, the ALJ noted that Plaintiff described ongoing daytime tiredness at times. (R. at 22.) Therefore, the ALJ included exertional and environmental limitations to account for daytime fatigue when crafting Plaintiff's residual functional capacity. (R. at 22.) The ALJ also discussed Plaintiff's fatigue when discussing his ability to interact with hazards. (R. at 22-25.) The ALJ noted how Plaintiff's providers documented Plaintiff: (1) had no deficiencies in his alertness and orientation; (2) did not demonstrate sensory or coordination abnormalities; and (3) did not demonstrate deficiencies in his overall cognitive function. (R. at 23.)

Further, the ALJ noted that Plaintiff had been hospitalized for pneumonia, bronchitis, and COPD exacerbation, but he experienced improvement with regular breathing treatments. (R. at 23.) Notably, the ALJ noticed Plaintiff did not follow treatment plans or recommendations. (R. at 23.) For example, Plaintiff was repeatedly instructed to stop smoking, but did not. (R. at 23.) Nonetheless, the ALJ accounted for the objective evidence appropriately when addressing Plaintiff's limitations and assessing his residual functional capacity. (R. at 22.) Specifically, the ALJ included Plaintiff's occasional ongoing daytime tiredness when determining his exertional and environmental limitations. (R. at 22.)

After a review of the record and the ALJ's written decision, the undersigned finds that the ALJ properly considered the objective medical evidence when weighing Plaintiff's subjective complaints. Moreover, substantial evidence supports the ALJ's assessment of Plaintiff's medical records. As result, the ALJ's assessment that the objective medical records proved inconsistent with Plaintiff's subjective complaints of fatigue is not in error.

> 3. *The ALJ Properly Considered Plaintiff's Conservative Course of Treatment in Discrediting Plaintiff's Subjective Complaints.*

Finally, Plaintiff argues that the ALJ committed legal error by failing to account for Plaintiff's fatigue in her residual functional capacity determination. (Pl.'s Mem. at 4.) As an initial matter the ALJ incorporated Plaintiff's symptoms of "some ongoing daytime tiredness" in her determination of Plaintiff's exertional and environmental determinations. During her creditability assessment, the ALJ evaluated the inconsistencies between Plaintiff's treatment regimen and his subjective complaints. (R. at 23.) Indeed, if a claimant requires only conservative treatment, an ALJ can reasonably hold that the alleged disability lacks the seriousness that the claimant alleges. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015). While the ALJ acknowledged that Plaintiff had breathing treatments, she noted that Plaintiff's providers did not indicate more aggressive treatment. (R. at 23.) The record demonstrates that Plaintiff providers continued to treat conservatively by using a CPAP machine and recommending Plaintiff lose weight and stop smoking. (R. at 441-42, 778-79.) The ALJ properly relied on that treatment to discredit Plaintiff's subjective complaints. (R. at 23.)

A review of the ALJ's decision and the record demonstrates that the ALJ properly considered Plaintiff's daily activities and the extent to which he could perform them, the objective medical evidence in the record, and the evidence of Plaintiff's manner of treatment in making his creditability determination. Moreover, the Court finds that the ALJ properly considered Plaintiff's relevant functions in crafting Plaintiff's residual functional capacity and provided a narrative and substantially supported explanation that created a logical bridge between the evidence of record and the residual functional capacity findings. Accordingly, this Court concludes that the ALJ did not err.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 23) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 25) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge John A. Gibney, Jr. and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: July 14, 2022